56  462
61  467
56  463
64o 164
56  463
70  248
70  556

THE STATE, CHARLES C. VAN ANGLEN ET AL., PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE ET AL.

1. Under the charter of the city of Bayonne (*Pamph. L.* 1872, *p.* 686, ¿ 62), the failure of the commissioners of assessment to file their preliminary report and map within twenty days after the ordinance for a street improvement is referred to them, will make all the proceedings voidable.

2. If, under the said charter, proceedings instituted for the improvement of a street, legally come to an end before the making of a contract for the work, the mere fact that subsequently a contract is made will not,

under section 80, bar the allowance of a *certiorari* to set aside the proceedings.

3. Proceedings so instituted, which are illegally conducted, may lawfully come to an end by being abandoned by the municipal authorities.

On *certiorari*.

Argued at February Term, 1894, before Justices DIXON and ABBETT.

For the prosecutors, *De Witt Van Buskirk*.

For the defendants, *James Benny*.

The opinion of the court was delivered by

DIXON, J.  This *certiorari* brings up proceedings taken by the authorities of the city of Bayonne for the laying of sidewalks and crosswalks in West Twenty-fifth street.

The proceedings were instituted in March, 1891, and were carried on until October 20th, 1891, when a remonstrance against the improvement, signed by the owners of a major part of the land along the line of the street, including the present prosecutors, was laid before the council and by it referred to its committee on streets. There the matter rested until June, 1893, when the then existing committee on streets recommended that the improvement be proceeded with, and accordingly, after advertising for bids, the council on December 5th, 1893, awarded the work to Matthew Ryan, who, on December 14th, entered into a contract with the city therefor. On December 30th, 1893, this *certiorari* was allowed.

Under these circumstances the city contends that the writ was improvidently issued and should be dismissed, because the city charter (*Pamph. L.* 1872, *p.* 686, § 80) provides "that no *certiorari* shall be granted or allowed to stay any proceedings (except the collection of the final assessment) for any street or sewer improvements, unless the writ be allowed * * * before the making of the contract, in case a contract is to be made."

Although the legislature cannot deprive this court of the power which it exerts by the writ of *certiorari*, yet it may prescribe limitations of time within which parties must apply for such a writ, and these prescriptions, so far as they are reasonable, will be observed by the court. *Traphagen* v. *West Hoboken*, 10 *Vroom* 232; 11 *Id.* 193. According to *Green* v. *Jersey City*, 13 *Id.* 118, the question of the reasonableness of the statutory limitation must be determined upon the facts of each case as it arises, and if the municipal proceedings have legally come to an end before a contract is signed, the making of a contract will not, under such a statute as is above quoted, bar the allowance of a writ.

In the case now before us, the presentation of the remonstrance would have ended the proceedings, if it had been accompanied with a deposit of the sum necessary to repay the expense previously incurred by the city on account of the proposed improvement. But that deposit not being made, the city charter, section 63, provided that the board of councilmen should " proceed forthwith to execute and carry out the improvement." The imperative nature of this provision is of course based upon the assumption that the prior proceedings had been lawful, for it is not to be supposed that if the proceedings up to that point had been illegal to such an extent that, on timely appeal to this court, they would have been set aside, nevertheless it was made the duty of the council to disregard the illegality and execute the projected work. On the contrary, we must presume a legislative intention that the council might voluntarily give up a public undertaking which had been so illegally conducted that the courts would compel its relinquishment.

Such illegality existed in the preliminary proceedings under review. Without adverting to other objections urged by the prosecutors, it appears that the commissioners of assessment failed to file their report and map within twenty days after the ordinance was referred to them, an omission which this court, in *Gleason* v. *Bergen*, 4 *Vroom* 72, and *Central Railroad Co.* v. *Bayonne*, 6 *Id.* 332, adjudged to be fatal.

When, therefore, the remonstrance was presented and referred by the council to its committee, this was the situation: the municipal authorities might proceed forthwith to carry out the improvement, subject to being stopped by a *certiorari* granted before the signing of a contract for the work, or they might abandon the enterprise. Which of these two courses was chosen is, I think, made clear by their subsequent conduct. Instead of proceeding forthwith to execute the work, they did nothing, nor was anything attempted until twenty months had elapsed, during which the term of every member of the council had expired and the entire *personnel* of the committee on streets had changed. Such a delay, following upon so substantial a remonstrance, would surely lead the remonstrants, and leads this court, to a belief that the projected improvement was abandoned. That being so, there were in June, 1893, no proceedings pending in which " a contract was to be made " within the meaning of the charter, and consequently there were no proceedings the review of which, by *certiorari*, could be barred by the mere making of a contract.

The writ was not improvidently allowed, and because of the illegality above mentioned the proceedings should be set aside.